IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| EDGAR L. BURNS, JR., and ) <br> MELANIE BURNS, ) <br> ) <br>    Plaintiffs, ) <br> ) <br>   v. ) <br> ) <br> U.S. BANK, N.A., and ) <br> BANK OF AMERICA, N.A., ) <br> ) <br>    Defendants. ) | CIVIL ACTION NO. <br> 3:12cv293-MHT <br> (WO) |

OPINION AND ORDER

Plaintiffs Edgar L. Burns, Jr. and Melanie Burns charge in this lawsuit that defendants U.S. Bank, N.A. and Bank of America, N.A. unlawfully foreclosed on their home after inducing them to stop making mortgage payments, promising them that their mortgage would be modified and no foreclosure would occur. This case was removed from state to federal court pursuant to 28 U.S.C. § 1441, based on 28 U.S.C § 1332 (diversity). This case is now before the court on the banks'[1] motion for summary

---

1. The record in this case is vague on the
(continued...)

judgment.  For the reasons that follow, that motion will be granted in part and denied in part.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the movant[s] show[] that there is no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  Here, the defendants are the movants.

---

(...continued)
relationship between U.S. Bank and Bank of America, although it appears that the Burnses' mortgage is currently held by U.S. Bank as trustee for Bank of America, and the mortgage is serviced by the latter.  As both sides' filings in this case do not distinguish between the entities, this opinion refers to both collectively as simply "the banks."

## II. BACKGROUND

The Burnses bought a home in Lee County, Alabama, with bank financing. At some point, they began having difficulty making their mortgage payments and they contacted the banks to inquire into a possible modification of their mortgage agreement. Precisely what occurred next is somewhat unclear from the scanty record presently before the court, but reading the record in the light most favorable to the Burnses, it seems to show as follows. Responding to the Burnses' inquiry, representatives from the banks orally told them that it was bank policy to modify mortgages only for property owners who were delinquent on payments. The representatives advised that, because the Burnses were up to date on payments, they should stop making payments for some period and then apply for a modification. If they did so, the representatives assured, no foreclosure would occur while the banks considered the application.

The Burnses followed the banks' instructions, stopping payments and applying for a modification. For reasons that are unclear, the application was not processed in the ordinary manner, and the Burnses were required to have repeated conversations with the banks. During these conversations, several bank representatives assured the Burnses on numerous occasions that the banks would not foreclose on their home.

Despite those representations, the Burnses received a letter from a law firm retained by the banks stating that the Burnses were in default and the banks was accelerating the remaining unpaid balance (that is, the full debt, rather than only the monthly payments, would be due immediately) and, if the Burnses did not pay that amount, the property would be foreclosed. Shortly after that, a foreclosure sale was held in front of the courthouse in Opelika, Lee County, Alabama, with the banks themselves purchasing the home.

The Burnses brought this lawsuit in state court, charging unlawful foreclosure, negligence, wantonness, and fraud.  The banks removed the case to this federal court.


III. DISCUSSION

Alabama law provides property owners an equitable cause of action to set aside unlawful foreclosures.  See, e.g., Farmers' Sav. Bank v. Murphree, 76 So. 932 (Ala. 1917); Randolph v. Bradford, 86 So. 39 (Ala. 1920).  In general, a foreclosure is lawful only if it satisfies certain statutory requirements.  See 1975 Ala. Code §§ 35-10-11 to -16.  Additionally, when a mortgage by its own terms contains conditions precedent to foreclosure, those conditions must be satisfied before a foreclosure may be lawfully made.  See Randolph, 86 So. at 41 (construing a mortgage agreement to contain a condition precedent to foreclosure and holding that "The mortgagee or his assignee had no right of foreclosure until ... the

5

condition was fulfilled"); <u>Jackson v. Wells Fargo Bank, N.A.</u>, 90 So. 3d 168, 173 (Ala. 2012) (collecting cases).

Here, the mortgage at issue provides that, "Lender shall give notice to Borrower prior to acceleration following Borrower's [default]."  Pls.' Br. (Doc. No. 20), Exh. 1, ¶ 22.  The mortgage goes on to specify the information required to be in the notice, including, that, unless the property owner takes certain remedial action (such as making the late payments), the banks may choose to accelerate the loan and foreclose on the property.[2]  <u>Id</u>.  These provisions, by their clear

---

    2.  Paragraph 22 reads in whole as follows:

> "22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days away from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to

(continued...)

———————————

(...continued)

>**cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**
>
>**"If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in LEE County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the**

(continued...)

language, require that the bank, as a condition precedent to acceleration and foreclosure, first provide notice to the property owner of the bank's intent. See Jackson, 90 So. 3d at 170-73 (construing identical language as such). If the bank does not provide the property owner with such notice and an opportunity to remedy the default, a subsequent foreclosure is unlawful. Id. As explained by the Alabama Supreme Court in Jackson, the mortgage provision at issue is a standard one, found in countless mortgages across the country, that is intended to provide

---

(...continued)
> front door of the County Courthouse in this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it."

Pls.' Br. (Doc. No. 20), Exh. 1, ¶ 22.

8

property owners with greater rights than otherwise afforded by applicable state law.  Id.

The Burnses contend that, despite their mortgage clearly mandating pre-acceleration-and-foreclosure notice, the banks never gave such notice and that, because the mandatory notice was not provided, the subsequent foreclosure is invalid.  The banks respond that they believes proper notice was sent, but they have not put forth any evidence of that being the case.  As such, whether proper notice was actually sent is plainly a dispute of material fact precluding summary judgment.  See id. at 173-74 (reversing lower court's entry of summary judgment in favor of the bank without evidence that proper notice was sent).

The banks make two arguments for why this result should not follow.  The first argument is: Instead of raising "any contractual notice arguments" in the complaint, the Burnses "asserted only that the foreclosure was 'conducted in violation of Alabama law,'"

9

and, because the Burnses failed to make their lack-of-notice claim in the complaint, they should not be permitted to do so now.  Defs.' Reply (Doc. No. 22).  The complaint plainly states that, "The foreclosure on the Burn[se]s' house was conducted in violation of Alabama law" and the defendants "did not have the legal right to foreclose."  Compl. ¶ 19-20, 21-24.  The banks' argument that the Burnses are now attempting to defeat summary judgment with a "new claim" involving "contractual" rights rather than "Alabama law" is puzzling.  It is, of course, Alabama law that requires the banks to abide by the terms of mortgages (including giving proper pre-acceleration-and-foreclosure notice when a mortgage so requires).  But for Alabama law, the mortgage document has no inherent magical qualities in this federal court.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 75-79 (1938) ("obligations under contracts" are governed by state law, and there is no "transcendental body of law outside of any particular State").

10

The spirit of the banks' argument seems to be that the vague allegations of foreclosure "in violation of Alabama law" were too imprecise to give the banks notice of their alleged wrongdoing.  But, after this lawsuit began, the banks had the right to ask for a court order requiring the Burnses to clarify their complaint, and the fault lies with the bank for failing to do so.  See Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading ... which is so vague or ambiguous that the party cannot reasonably prepare a response."); Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 90 F.R.D. 21, 24 (N.D. Ill. 1980) (Aspen, J.) (motion for a more definite statement is appropriate where the complaint is "'woefully deficient' in providing [defendant] with notice of [its] alleged wrongful conduct").

The banks' second argument is that, even if the Burnses were not given formal notice in compliance with the mortgage, they had constructive notice, which

suffices under Alabama law. For that proposition, the banks cite Redman v. Federal Home Mortgage Corp., 765 So. 2d 630 (Ala. 1999). In that case, the Alabama Supreme Court, addressing an identical mortgage provision as the one at issue in this case, held that when property owners claim to have not received formal pre-acceleration-and-foreclosure notice, the issue before the court is "whether [the property owners], as reasonable persons, had notice of facts sufficient to cause them to make further inquiry as to the status of [their] mortgage account with [the bank]." Id. at 635. If the property owners had such constructive notice, the bank may foreclose on the property regardless of whether the property owners actually received formal notice. Id.

The banks, in applying that principle to the facts of this case, argue that the Burnses obviously were aware that they were not making their mortgage payments (they admit as much) and, therefore, they had constructive notice. That argument misses the point. The

12

constructive notice inquiry is not whether the Burnses were aware that they were not making payments, but rather whether they were aware that the bank intended to accelerate their debt and foreclose on their property. See id. at 635 ("It is clear from the record that the defendants closed their eyes to avoid 'discovery' of the truth that was reasonably apparent: that the Mortgage was seriously in arrears and that SouthTrust was ready to legally foreclose on the property.") (emphasis added). The evidence currently before the court, viewed in the light most favorable to the Burnses, shows that the banks never sent them formal notice and that, on the contrary, represented to them orally that the banks had no intention to accelerate and foreclose.  It is obvious that the Burnses could not have been constructively aware of the banks' intent when their agents expressly stated that the banks had no such intent.  See Alexander v. Fountain, 70 So. 669, 670 (Ala. 1916) ("Whatever is sufficient to put one on his guard and call for inquiry

13

is notice of everything <u>to which the inquiry would lead</u>.") (emphasis added). As such, the banks' motion for summary judgment on the Burnses' unlawful-foreclosure claim will be denied.[3]

In addition to the unlawful foreclosure claim, the Burnses assert claims for negligence, wantonness, and fraud. As for the negligence and wantonness claims, the Burnses now agree with the banks that summary judgment should be entered in the banks' favor, and the court will do so accordingly. Regarding the fraud claims, the Burnses state that they oppose granting summary judgment to the banks, but, they concede that the current state of Alabama law does not support those claims. See <u>Manker v. CitiMortgage, Inc.</u>, 2012 WL 999611, at *5 (M.D. Ala. Mar. 23, 2012) (Watkins, J.) (construing Alabama law as such). It is, of course, unquestionable that this court, sitting

---

3. The Burnses also argue that the unlawfulness of the foreclosure is evident in the low price the property sold for at auction. Because the court denies summary judgment on this count on the basis of the notice dispute, it is unnecessary to reach these arguments.

14

in diversity, does not have "the power to ... create substantive rights denied by State law." Guar. Trust Co. of N.Y. v. York, 326 U.S. 99, 105 (1945).  In the absence of Alabama law supporting the Burnses' purported right, this court has no choice but to grant judgment for the bank.

In sum, this case must proceed to trial on the Burnses' unlawful foreclosure claim.  As for all other charges, judgment will be granted to the bank.

\*\*\*

Accordingly, it is ORDERED as follows:

(1) Defendants U.S. Bank, N.A. and Bank of America, N.A.'s motion for summary judgment (Doc. No. 15) is granted in part and denied in part.

(2) The motion is denied as to plaintiffs Edgar L. Burns, Jr. and Melanie Burns's unlawful-foreclosure claim.  This claim will go to trial.

    **(3) The motion is granted as to all remaining claims, with the Burns plaintiffs taking nothing as to these remaining claims.**

    **DONE, this the 30th day of January, 2013.**

    <u>/s/ Myron H. Thompson</u>
    **UNITED STATES DISTRICT JUDGE**